KURTZ *v.* DETROIT UNITED RAILWAY.

1. NEGLIGENCE — PERMANENT INJURIES — EVIDENCE—QUESTION FOR JURY.
   In an action for damages for the loss of a foot claimed to have resulted from a collision between plaintiff's automobile and defendant's street car, evidence *held*, to make a case for the jury.

2. SAME—EVIDENCE—GREAT WEIGHT OF EVIDENCE.
   Although there was testimony that plaintiff suffered an injury to the foot when he was a boy, the verdict of the jury that defendant's negligence was the proximate cause of the loss of the foot, *held*, not against the great weight of the evidence.

3. APPEAL AND ERROR—INSTRUCTIONS GIVEN ON REQUEST OF APPELLANT NOT CONSIDERED.
   Where plaintiff made no claim of an existing disorder, defendant may not complain of an instruction of the court, given at its request, that plaintiff might recover for aggravation of an existing disorder, if found.

4. DAMAGES—EXCESSIVE VERDICT.
   Where plaintiff, 31 years of age, earning about $6,000 a year at the time of the accident sued on, was rendered a permanent cripple by amputation of the leg below the knee, and the evidence shows that loss of earnings during the period of illness, together with disbursements, exceeded $5,000, that he is now earning only $40 a week, that there was much pain and suffering besides humiliation because of being a cripple, and there is nothing to indicate that the verdict was the result of anything but the evidence, it cannot be said that a verdict for $17,166 is excessive.

Error to Wayne; Smith (Guy E.), J., presiding. Submitted October 31, 1922. (Docket No. 100.) Decided December 5, 1922.

On excessiveness of verdicts in actions for personal injuries other than death, see note in L. R. A. 1915F, 30.

Case by Elza Kurtz against the Detroit United Railway for personal injuries.    Judgment for plaintiff. Defendant brings error.    Affirmed.

*W. G. Fitzpatrick, James H. Lynch,* and *Clinton McGee,* for appellant.

*Andrew L. Moore,* for appellee.

CLARK, J.   In the evening of November 1, 1920, plaintiff drove his automobile southerly along Washington boulevard in Detroit, intending to cross defendant's double street railway tracks on Grand River avenue and then to turn easterly on Grand River. When he approached the railway tracks at the intersection of the two streets, he observed a street car with trailer, headed east, standing on the intersection. The rear end of the trailer had cleared the way for southerly traffic on Washington.   While he was attempting to pass behind the trailer, to proceed as stated, the street cars were backed, without warning, as he says, and the trailer collided with his car. Plaintiff was thrown.   His right foot "hit the speed lever shifter."   He was conscious of no serious injury at the time.   He drove his car to his home in Pontiac. When he removed his shoe that night he observed discoloration on his foot, "a little red from the bump." There was no abrasion of the skin.   The next day he filed a claim with defendant respecting the automobile and said he had no personal injury.   But he began to suffer pain in the foot.   Various lay treatments were attempted.   The pain continued for days. Swelling, discoloration and fever ensued.   He consulted a physician about November 9th, and later other physicians.   X-ray photographs were made.   The diagnosis of attending physicians was osteomyelitis. He was taken to a hospital on November 22d.   An incision in the foot was made.   A plaster cast was

put on.  On November 28th, 29th, and 30th he had ethereal pneumonia, having taken two anæsthetics. The swelling progressed above the ankle.  There were frequent painful dressings.  He was very critically ill, suffering acute pain.  On December 4th there was an amputation below the knee.  He was taken from the hospital December 24th, and remained in bed at home for some time.  He began to go about on crutches and later got an artificial limb, which, because of irregularities produced by the healing of the bones, he has used with pain and difficulty.  That he may use it successfully another operation is advised.  The plaintiff was 31 years of age at the time of the accident.  When a boy about 9 years of age he received a blow from a shinney club on the right foot or ankle, resulting in infection, discharge, white swelling, and of which he suffered for 15 months, and from which he claimed to have recovered except for a callous or scar tissue and a slight limp.  The foot was again somewhat injured in 1907, but, he says, of that there was a quick recovery.  He engaged in the common boyish sports and became, seemingly, a vigorous, healthy, active man.  Other facts must be stated in considering the questions raised.  Plaintiff had verdict and judgment.  Defendant brings error, and contends:

1. That the verdict is against the great weight of the evidence and that the motion for a new trial therefore should have been granted.  The questions of negligence and contributory negligence are not discussed in the briefs.  The theory of plaintiff's declaration is stated:

"Plaintiff alleges that the injury of the foot was the direct proximate cause of the condition, which finally resulted in the amputation, and that such injury was caused solely by the negligence of the defendant company."

By the testimony of plaintiff and his witnesses, in-

cluding several physicians, plaintiff made a case for the jury on his theory. The theory of the defense seems to have been that plaintiff's trouble was due entirely to the injury he received when a boy, and that in any event the accident in question resulted in nothing more than an aggravation of an existing disorder. Learning from plaintiff, several months before the trial, the history of his old injury, defendant caused depositions to be taken at the place of plaintiff's boyhood. These depositions tend to corroborate plaintiff's testimony respecting his early injury and recovery therefrom. Defendant's theory was developed principally by medical witnesses who gave opinion evidence that at the time of the accident plaintiff had the old latent infection, dormant or incapsulated, and that the accident was not the direct cause of his injury. But some of such witnesses stated on cross-examination that the accident was the exciting cause, the proximate cause that lighted up the latent injury, and that the amputation on December 4th was attributable to the accident. Plaintiff had medical testimony that the injury of November 1, 1920, was the direct and sole cause of the condition which necessitated the amputation. From a consideration of all the evidence we conclude that the trial court was right in declining to hold the verdict to be against the great weight of the evidence.

2. That, as plaintiff did not claim in his declaration an aggravation of an existing disorder, the court erred in instructing that there might be recovery for such aggravation if found. The cases of *Fuller* v. *Mayor, etc., of Jackson,* 92 Mich. 197, and *Hall* v. *City of Cadillac,* 114 Mich. 99, are cited. But we find upon examination of the original requests to charge, returned to this court, that such instruction was requested by defendant in its 16th and 18th requests. The court charged on plaintiff's theory

of recovery as stated and then also said, at defendant's request, that there might be recovery for an aggravation of an existing infirmity, if found. Had the charge been confined to plaintiff's theory some of defendant's criticism of it might merit discussion, but in view of defendant's requests we think it unnecessary to consider the charge further, finding in it no reversible error.

3. That the verdict in the sum of $17,166 is excessive, and that the trial court erred in not so holding on the motion for a new trial. Plaintiff's physical injuries, pain and suffering have been stated. He was totally disabled, respecting employment, for a period of about eight months. His disbursements for medical treatment, etc., were $1,251.70. He had been employed from September, 1916, to July, 1919, as sales manager for the Michigan Tool Company for which he received about $6,000 per year which included commissions. He also received "expenses, traveling expenses and upkeep and car." At the time of the accident he had agreed to re-enter such employment. The secretary of the company testified:

"We, that is the company, was going to pay him a salary of $65 a week and was going to pay him a certain percentage on his monthly sales. That was the same position he occupied between 1916 and 1919."

Plaintiff did not return to the employment. When he was able to go about he was given a position with such company as salesman at $35 per week and at the time of the trial, November, 1921, he was receiving $40 per week. All the elements of damage, including loss of earnings, disbursements, impairment of earning capacity, humiliation because of being a cripple, pain, suffering and inconvenience, were covered in the charge. The jury might find and doubtless did find that plaintiff's injuries were caused wholly by the accident. There was evidence to sustain a finding

that the loss of earnings during the period of illness together with the disbursements exceeded $5,000. The remainder of the verdict must be upon the other elements in the case which were covered by the proofs. The record discloses no appeals to prejudice. There is nothing to indicate that the verdict is the result of anything but the evidence. In L. R. A. 1915F, 215, will be found a list of cases respecting damages for injuries resulting in a like amputation. In most cases, where the facts are somewhat similar, verdicts have been sustained in sums ranging from $6,000 to $15,000. There are cases without these figures. But each case must be determined upon its own facts.

The verdict is large but we think it is not so grossly excessive as of itself to show passion or prejudice on the part of the jury. Language used in *Wilson* v. *Railway,* 208 Mich. 411, is pertinent:

"We have searched this record in vain to find appeals to prejudice, passion or partiality that would justify us in saying that the verdict was the result of anything other than the evidence in the case; nor can we say that the verdict is so grossly excessive that of itself it shows prejudice, passion or partiality on the part of the jury. We could only set this verdict aside by substituting our judgment for that of the jury. This, under the repeated decisions of this court, we may not do."

And see *Fishleigh* v. *Railway,* 205 Mich. 145. We cannot say that the verdict is excessive.

No other question merits discussion.

The judgment is affirmed.

FELLOWS, C. J., and WIEST, MCDONALD, BIRD, SHARPE, and STEERE, JJ., concurred. MOORE, J., did not sit.